So last case of the day, case number 4-14-0690 in Ray the Estate of Owen Thomas Lasley. On behalf of the appellant is Attorney Hanson, on behalf of the appellee is Attorney LaView. Mr. Hanson are you ready to proceed? Yes Your Honor. Your Honor, may it please the court. We're here today on my appeal of an order entered by the trial court in this case whereby they dismissed my case under 2-6-19 motion. My case was basically brought by way of an in an estate here in Sangamon County and I filed a complaint to determine an airship and to vacate an order of airship. In that complaint, there was an order of airship. Mr. LaView, on behalf of his clients, I represent Fontaine Lasley. Fontaine is one of four putative children. When I say putative, that's one of the issues in the case. Their names appear on the birth certificates, but we are contesting airship. They were raised as children of the deceased? I actually attached affidavits from three different people who were not going to receive under the estate because I knew that my client giving an affidavit of the main things that he knew would not be admissible in either an affidavit or a hearing. After I filed the motion, Mr. LaView filed a motion to dismiss alleging basically that my affidavits were insufficient and that the presumption of parentage that occurs when you're on a birth certificate should prevail and that I had not rebutted the presumption. The court, in entering its order dismissing, basically said the following. The affidavits filed in support of the plaintiff's motion, those are the affidavits that I attached to my complaint, violate Supreme Court Rule 191 and the Dead Man's Act because they claim to relate to conversations with the deceased whether or not he was the biological father. The court went on to say the defendants were born during the marriage and therefore are presumed legitimate and the plaintiff's affidavits fail to present the necessary evidence to serve the presumption of legitimacy. I bring this appeal for the reason that we never got to a hearing, we never got into discovery. This was stopped at the very beginning before anything happened, something akin to a dispositive 619 motion saying that there are no set of facts that are alleged that would allow you to get on past it to a trial or hearing on the issues. In my complaint, we allege as facts that they are not the children. I mean, all the facts we allege are there. This motion dismissed was treated somewhat, I submit, your honors, as something like a motion for summary judgment, although it was not brought that way. But there were competing affidavits, my affidavits and their affidavits that both allege different statements about the parentage of the children. The three affidavits that I tendered, I recall, one was from a brother, one was from a sister, and one was from a stepchild. In other words, a daughter of his wife, the wife of the parents of my client and these others. Second wife, right?  But to cut to the chase, the next thing is, did I raise enough of a factual issue or enough facts to take this beyond just a, I think they're not my children, because the JARC case was based on double hearsay and self-serving affidavits. That's what the case said. In our case, we have affidavits from non-beneficiaries that are saying exactly what the decedent said, the decedent being Mr. Lasley, Owen Thomas Lasley, the father. He said these on more than one occasion as what's represented in my affidavit, that these three were not his children. The argument was made at the hearing that this is hearsay, but it's an exception to hearsay if it's an admission against interest or a statement made by a father regarding a relationship. So they should have stood. On the other hand, Your Honors, the affidavits tendered by the other three children were all from them, basically saying that dad never told me that. Which, quite frankly, if we went to hearing, I submit to Your Honors, it would not be relevant. It would not be able to testify about what dad said, just like my client would not be able to testify about what dad said. There was a case raised that came out of a separate circuit, I think it's Cowley, that spoke about some of these issues. It's not this circuit, but it talked about this rule. It's Cawley. Cawley, excuse me, Your Honor. A-A-U-L-L, Cawley. Cawley. There was some discussion in that case about one of the issues that was raised in this case, and that was whether the parent to Jack was dispositive of this issue. In that court, they said, no, within the inherent powers of a court to determine issues, and in this case, heirship, that parentage doesn't control. If the decedent would have been bringing an action himself to contest some responsibility that he either defaulted on or didn't know about or whatever, yes, those things could be. But that's not the case here. My client is not the decedent. So really, the issue is, are they an heir, and is there enough raise to submit that they should be submitted to a test? Now, we didn't get to the motion on the testing because it was disposed of before we ever got to that point. In addition to the discussion in the Cawley case about, I guess, the imposition on the adverse party to submit to a DNA test, I submit to the court that yes, in the context of a family situation where we've got a parent and child, those cases talk about attacking parentage. We don't want to have some indecisiveness on kids. We're not talking about that. We're talking about heirship, and are these people the actual heirs or are they not because we didn't have the will. Although my client attached an affidavit that an attorney by the name of, I think it was Sheehan or something, prepared a will, it wasn't signed. It's not effective, but it is one bit of evidence that's indicative of something that suggests that he wasn't going to give these monies to his child. But I only raise that because that's one additional fact. And through discovery, I don't even get a chance to discover whether Mr. Sheehan can disclose if the privilege would be waived, whether or not there was some expression made to him. I haven't even gotten to discovery. I didn't get there. With respect to the 191 argument that my affidavits were insufficient, I submit to you that if this court found that there were some conclusory statements in the affidavits, you don't have to disregard the whole affidavit. You can say, well, that's a conclusion, but that is an allegation of fact. And the facts that I think are not subject to any claim of conclusiveness are that father said on these occasions that these were not his children. There is resistance to that testing. I mean, quite frankly, I didn't anticipate that. I didn't say I can't anticipate it, but I kind of felt like, I'm the kid. I'll submit to the test. But there is resistance. And so the issue, but do I raise enough factors that this court or a court would say that's enough to ask them to intrude upon them? And the Cal case basically said that there's a balancing there, whether it's an intrusion on asking to submit to DNA. There's a whole litany of cases discussed in Cal about that intrusion, how it's changed, and how some of those things have morphed over the years. But as you know now, it's a swap. We're not there yet, but if I went out and I got DNA from one of these parties who disposed of DNA or something like that, that might be submitted. But again, we never reached discovery or my need for discovery because I never reached that motion argument. For purposes of a 619 motion, just to basically state what I've always practiced, is that an involuntary dismissal assumes all well-pled facts and reasonable inferences from those facts is true. And I don't believe I got the benefit of that assumption. And in deciding a 619 motion to dismiss, the court must construe the pleadings in the most favorable way to the non-moving party. I submit to your honors that when I filed a motion to reconsider, I tried to set forth to the judge why I thought that he would ask me to reconsider. And one of the issues was he had basically stricken my affidavits saying that they were violative of the Dead Man's Act, when quite frankly, your honors, I thought the opposite was true, and I brought that to the court's attention. The court said it didn't agree. Your honors can look at that and see what you believe, but I don't believe that my affidavits violated the Dead Man's Act. And I believe that the testimony of those parties would be admitted, pursuant to the rules of evidence here in Illinois, in particular that, I'm not going to say hearsay, but they talk about relationships and the exception to hearsay, Well, if the affidavits are missing, or disregarded, what's the response to you for a 2619 motion to dismiss? It would still stand because, other than the presumption, and I submit to you that the presumption of paternity is not dispositive of paternity, and the affidavits, I submit to you, your honors, that all the affidavits they submitted are based on the Dead Man's Act. So there is a question. In fact, I have a complaint that alleges these things. They have a complaint. They have affidavits that say that they're, and all they really say in their affidavits, your honor, is that they had never told me that. They never say that the person, the brother, the sister, whoever, my affidavits, they never say that that's the case. On a 2619 motion to dismiss, are you supposed to be weighing facts and affidavits and stuff, or is it a matter of just simply the pleading? It's simply, and I submit to you that my pleading on its face alleges facts that, if proven, would give me the result. But when I filed it, I added the affidavits and referenced the affidavits, basically, I don't know, it was just a decision I made to say, you know, I know the jar case is going to come up, let me just go ahead and get that out there. I wanted to know that I had something, you know, ahead of time. I don't believe they, quite frankly, your honor, if we'd say, you have no affidavits to transfer, but you're alleging these facts, what are they alleging back? What are they alleging back is I've got a birth certificate, and I never heard Dad say that. They're alleging back by affidavit. By affidavit.  That's what they're saying in the facts. They do have a better fact when they allege the birth certificate, but that's a rebuttable presumption. That's a rebuttable presumption at trial. In other words, you don't try it in a 619 motion to, I'm sorry judge, I submit to you that you don't try that issue in a 619. You take some discovery, you might file summary judgment motions or those kinds of things at a later point, but didn't get there, didn't get the discovery. I agree that at a motion for summary judgment or a dispositive 619 that there is no set of facts that you can allege, approve, or ever come up with through discovery that that might be the case. But I accept your premise, judge. I attached an affidavit. Judge Strick struck it, but whether or not your honors agree that it should have been struck or that it was premature, that's why we're here, to allow you to review. Your honors, I'm sorry, am I on time? You'll get a yellow light when you've got it. I'm sorry, judge, my first time here, I don't know which way to look for those things. That's all right. The buttons are right there in front of you. So basically, just to review those issues from my perspective, the one issue that was raised after I filed that I was not aware of was an issue that shortly before the decedent, in this case, Owen Tom Lasley, passed away, my client brought an action for guardianship. And if the courts, you know, they know there's a form, you have to petition, and one of the things you name off and it says in their relationship, kindred, children, so on and so forth. My client filed and signed one that listed these three, four people as the children, and the argument has been made that that was an admission. I say the claim is a judicial admission, although the court never mentioned that in its ruling. It was raised in the motion, and it was raised in the brief. I submit to you that we're here to determine whether there's heirship. There is. They are the children, unless this court sends the case back and another court decides that they're not. So I submit to you, when you file the petition, you don't say, these are the children, but I don't think they're children. I mean, I don't think that that is a binding judicial admission, but I could not find any cases, and they don't cite any cases that say in that context. There may well be. There may be. I didn't find them. Now, the trial judge is going to have discretion on whether or not, if we send this case back, he's going to have discretion on whether or not to grant. The testing? Right. Yes. And I submit to you I'm going to try to take some more discovery and find some more people that can weigh in on the facts of that. No matter if you find 100 people, there are important policy decisions that the court may look at, for example. And I think, I don't know if you're familiar with the Supreme Court case that came down recently about constructive adoption. Have you seen that case? I have not seen the case, Judge. In a probate case. So the court in a probate case has said basically a child who was held out to be an adopted child, but never was formally adopted, stands to inherit. Your Honor, I didn't see the case, so I can't. But I don't know if that case went to trial or was dismissed at a 619. I don't know that, so I apologize. If your motion for DNA testing were granted, would that require an exhumation? No. What I'm told by the experts that do this is that they have accepted expert testimony about relationship DNA, but the court would have to rule whether they agree that that's not. So they could test various living folk and figure it out from that. Yes, that would be probably the best evidence that we would have. But that's in response to your case. You know, I think that what I read is that the court exercises their discretion. Is there enough there to require DNA testing? And we've got the jar case that says that's not near enough. And we've got the car case that says that's plenty. And we've got the facts of mine as alleged, my ultimate facts, and my affidavits. But I may find more. I don't know. I just submit to you that it's premature. But, again, that's for your honors to determine. You've argued in your brief that they filed an improper hybrid motion. You know, Judge, I don't think that's key to my case. But did you move to strike it in the concord? I did not. I mean, I raise that issue, but I'm not arguing it today, Your Honor. Did you argue in the trial court that the remedy sought under dismissal under 2619 was inappropriate for the reasons you discussed on appeal? Yes. The Jimmy Johns case and Howell v. Aquilinoi, et cetera?  My argument is that at 619, you look at the pleadings. And I never got a chance to get into discovery or do anything else. And I submit to you that the pleadings do raise an issue of facts. So I don't know if I answered your question, Your Honor. Okay. And the Curry case, call case, call case, excuse me, Your Honor. If you ever get something stuck in your mind, you can't get it out. But the call case basically talked about the, I think, the changes of 215 at some point in time that one of the decisions was to balance the need versus the excessive burden. And even the other case that says, will this test result in, could it result in disinheritance? And I submit to you, it can. Okay? It could. I'm not saying it will, but it can. Swipe with a, I mean, in my paternity cases, I get involved. They swipe it, they send it off to a lab, and they do their chain of custody and what have you. And the courts rely on those. So the intrusions that we once had about taking blood and those things are much changed. You know, I guess the bottom line is this. We're talking about the discretion. I'm not trying to suggest that the court at a point in time might have to exercise that discretion. I just didn't get a chance to present my best case of that. And I felt, for the reasons I've stated, that I presented issues of fact that should have allowed me to. But that's my argument, Your Honors. Do you have any questions, Your Honors? I don't see any. Thank you. Thank you. We'll have more time on rebuttal. Thank you. Mr. Lebut? Thank you. Good afternoon. Please support, counsel. It's our contention, the appellee's contention, that the JARC, I'm not sure what the correct pronunciation is, should control here. I think the facts are very similar. And they're very similar to the extent that in JARC, you know, there was affidavits from the father and the aunt saying that the person in question was not the heir. Then there were contradictory affidavits from the mother. And then there were birth certificates which were offered in contradiction. And as you know and decided is that they found that that wasn't enough to overcome the presumptions that were involved there. It's uncontested that my clients were born during the course of the marriage. You're arguing the merits of this case. My question is, since you made a motion to dismiss under Section 2619, which the trial court granted, what's the affirmative matter that you raised at the trial court and are raising now that defeats this claim? Well, several things. And to answer your question, I'm raising the presumption of paternity. I'm raising the matter that's contained in the affidavits of my clients to include the birth certificates. What do those facts have to do with whether or not Fontaine has clearly alleged that the seed was not the biological or adoptive father? I mean, why should the trial judge be weighing affidavits and thinking about the merits of what each side might be able to show at a later hearing like summary judgment? What does that have to do with the 2619? Affirmative matter can't be facts saying I've got better facts than the other guy, so I win. Well, I think that's what the presumption of paternity is. Well, it's only a presumption. And it's a rebuttable presumption. But I think under JARC and the Binion case... But JARC wasn't a 2619. Right, it was the DNA. Well, it was a contempt petition. Right, contempt petition. But in those... This court has explained repeatedly, following up on Supreme Court decisions, in the cases that Mr. Hansen has cited, a 2619 motion is a yes, but motion. That is, yes, but means yes, you've stated the cause of action, Mr. Hansen, but because of some affirmative matter, you lose. It's affirmative matter such as the statute of limitations is run, or affirmative matter such as the defendant is immune, like a park district, or affirmative matter such as you have no standing, or affirmative matter having nothing to do with a negation of the fundamental affirmance of fact, which the plaintiff has brought. That's not affirmative matter. What's the affirmative matter in this case other than the negation of the facts underlying the claim? The birth certificate, as I indicated. That's negating the facts underlying the claim. That's not affirmative matter. And the judicial admission by the appellant himself that they in fact were the children of the deceased. As this connect points out, that would all be important stuff in a motion for summary judgment. But we're just at a pleading stage now where what you're saying to Mr. Hansen is you may not proceed with this case. You have otherwise stated a legitimate cause of action against me for purposes of my 2619 motion, but because of this affirmative matter, you lose. Affirmative matter unrelated to the factual affirmance of the complaint. Is that what I'm saying, counsel? I do. What's the affirmative matter in this case? Well, I'd have to repeat what I just said. I mean, it's our position that that's what the affirmative matter was. And, you know, if I can deal with that. I mean, the section 21989 allows a person to assert affirmative matter. I mean, you are indicating to me that you don't believe what I've raised is affirmative matter. I believe it was. Well, as a matter of fact, it's almost as if your motion is the textbook example of what doesn't work. Because your motion is in two parts. It's a motion to dismiss under 2615 in which you're claiming that he fails to state a proper cause of action. And you do that in some 17 paragraphs. And then the other part of it is motion to dismiss under section 2619 in which you reallege the same 17 paragraphs of the motion to dismiss under your 2615 portion. And, in addition, allege not another thing. So, if we're wondering about is there some affirmative matter in addition to the claimed insufficiencies of his general complaint, we don't have to wonder long because you identified nothing as affirmative matter in your own motion. Well, I thought I did. I'm looking at it right here, counsel. You allege paragraphs 1 through 17. Wherefore, you've moved to dismiss. And, plus, you also, Judge Smith, I'm kind of surprised, bought this argument about rule 191A because it's limited to 2619 in affirmative matter issues. In motions for summary judgment, there's nothing to do with the sufficiency of a complaint under 2615. The Supreme Court, in its rule, specifically refers only to 2105 of the Code of Civil Procedure and 2619, motions for summary judgment and motions for involuntary dismissal based upon affirmative matter, none of which is now before Judge Smith. So, 191A deficiencies don't arise at this stage of proceedings, counsel. They only arise if and when Mr. Hansen would make a motion for summary judgment, then any affidavits he presents in support of his motion would be subject to these requirements and, if deficient, could be struck. In that, to also address that point, what the cases of, well, the Jimmy John case and Holmes case and the ones that were quoted say that if, talk about fact pleadings and the ability of this court in its de novo review to, whether or not to consider it a type of summary judgment matter. And what you look at is... Do you think Reynolds v. Jimmy John supports your position? No. No, I'm just saying that one of the things that that case does say is that if this is a fact... I wrote Howell, and you're correct. And Howell, the parties mislabeled it all, and I explained why they mislabeled it. And I said they essentially argued it as if it was a motion for summary judgment, and that's how the court... So it was a comedy of errors, and we accepted their mischaracterizations on that basis. Well, you know, it's our contention that, you know, we did submit affirmative matter. Obviously, you know, there's a question of whether that's true, and that's, you know, what you have to rule. And there's the question of the burden of proof, and can you raise that at this point in time in the proceedings? And I believe you can. I mean, you can raise affirmative matter under 219A9. That doesn't negate the claim. You understand a statute of limitations would say to Mr. Hansen, you stated a good cause of action. We'll assume, we'll accept, assuming arguendo, but you still lose. That's why I say yes, but motion. You lose because of something other than the factual affirmance and the sufficiency of the underlying claim, like no standard, like the statute of limitations is wrong, like the defendant is immune. That's what affirmative matter means. The statute of frauds applies and rejects this case. You keep citing us matters which negate the underlying claim, like claimed judicial admissions, which would be important at the summary judgment stage, like affidavits or like birth certificates or other matters which have nothing to do with affirmative matter. I shall call your attention the Mall case, which I argued in my brief, and there's a question of whether they forfeited the right to even contest deership. I mean, under the facts of that particular case, this was the original order. It was prior to the Illinois Parentage Act, and the proceedings occurred after the application of the Parentage Act, and they found in that case, because of the admissions that he made in open court in a divorce proceeding, is that he couldn't later change that and had waived his right to contest the parentage or heirship in a subsequent proceeding. In a subsequent proceeding, DNA testing was ordered. The DNA test found that he wasn't, indeed wasn't, the father, and then the appellate court reversed, said because of the open admission by him in a previous case, or in that case, that he was, indeed, the father, even though later DNA tests said otherwise. I believe that is something that the court should also consider in making its decision. I'd like to comment a little bit on the call decision. Again, the call decision talked about presumptions and it talked about the burden of proof, and I don't think it really changed the application of the JARC decision. It's a presumption, as in JARC there was a presumption, and was there sufficient evidence or affirmative matter brought forth to rebut that, and they said that there was ample evidence. And the facts of the case in call were the mother, the father, the boyfriend all admitted, and then there was a home DNA test or a home pregnancy test, which they took and found that the person in question was not the parent, and the only defense in that case was the person who was contesting it was the fact that it was hearsay evidence. So despite the fact that the DNA test even showed that, if he makes that admission, that case is authority for a position that the person may indeed have waived his right to contest heirship. I mean, if there's other questions, I'll try to answer them, but I think everything else has been contained in the brief. I don't see any further questions. Thank you. All right. Attorney LaVio. Mr. Hanson, any rebuttal? Your Honor, I'll try to get it right. In the call case, one of the issues raised was that the Parentage Act and the provisions in the case law applied. In that case, that was a trustee trying to get direction as to whether a person was an heir. And I draw the Court's attention to where they address that and basically say parentage, this is not necessarily parentage even though they sound the same and some of the same testing procedures are used to determine parentage. This is the probate case and within the inherent powers of the Court, it can make decisions regarding probate, including heirship. With respect to the reliability of what, you know, I don't know whether when the case gets to the final point, I've got everything I have, whether I'll have enough to convince the Court that the discretion should be exercised, but I submit to you that if I'm able to get that far and the Court does order, then I have one set of proof that I think is pretty reliable, DNA. But if I don't, then I may have to present it on what I have and it may not be sufficient. But again, I didn't get that. And in that call case, on page 41, it talks about the hearsay exception that when the person himself say, like in the call case, the father said, he's my kid to some state agency, and they used that and they were saying that was hearsay because he was dead. I don't know if the Court recalls that, but they were saying that. And they said, no, there's a hearsay exception if you make a statement about family history and relationship by blood. Well, this man, this is, see, no one, Tom Leslie, whether it's factually believed or not by these people when they testify, are going to testify, he said that. Is that going to be enough to convince a judge to maybe order a test or to find in favor of a change in heirship? I don't know. But I submit to you that the call case, while not dispositive, has some arguments and some authority that may be relevant to your decision. Any other questions, Your Honor? I don't see any. Thank you. Thank you all. We'll take this matter under advisement to stand in recess.